UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------x
:
LAWRENCE F. GLASER, on Behalf of :
Himself and All Others Similarly Situated, : Civil Action No. 1:09-cv-08904-RJH
Plaintiff, : (Consolidated)
:
vs. :
:
THE9, LTD., XIAOWEI CHEN, :
GEORGE LAI, HANNAH LEE, :
TONY TSE and JUN ZHU, :
Defendants :
---------------------------------------x

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED COMPLAINT

Peter A. Wald (*pro hac vice*)
David J. Schindler (*pro hac vice*)
Ethan Brown (*pro hac vice*)
Robert J. Malionek
Matthew L. Kutcher

LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
(212) 906-1200

*Counsel for Defendants The9, Ltd., Xiaowei Chen, George Lai, Hannah Lee, Tony Tse and Jun Zhu*

August 11, 2010

## TABLE OF CONTENTS

**Page**

Preliminary Statement ...........................................................................................................................1

Argument ...............................................................................................................................................2

I. THE COMPLAINT FAILS TO PLEAD PARTICULARIZED FACTS SUFFICIENT TO ESTABLISH FALSITY........................................................................2

    A. The Forward-Looking Statements Concerning License Renewal Are Accompanied by Meaningful Cautionary Language .................................................4

    B. The Complaint Fails to Plead Particularized Facts Establishing That Defendants Knew The License Would Not Be Renewed .........................................5

II. THE COMPLAINT FAILS TO PLEAD PARTICULARIZED FACTS SUFFICIENT TO ESTABLISH A STRONG INFERENCE OF SCIENTER ....................7

III. THE COMPLAINT FAILS TO PLEAD LOSS CAUSATION ........................................10

Conclusion ...........................................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

## CASES

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) .................................................................................................. 7

*Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*,
   394 F.3d 126 (3d Cir. 2004) ................................................................................................. 7

*Campo v. Sears Holdings Corp.*,
   635 F. Supp. 2d 323 (S.D.N.Y. 2009),
   aff'd, No. 09-3589-CV, 2010 WL 1292329 (2d Cir. Apr. 6, 2010) ....................................... 6

*Cosmas v. Hassett*,
   886 F.2d 8 (2d Cir. 1989) ..................................................................................................... 9

*In re Am. Express Co. Sec. Litig.*,
   No. 02 Civ. 5533(WHP), 2008 WL 4501928 (S.D.N.Y. Sept. 26, 2008),
   aff'd sub nom. *Slayton v. Am. Express Co.*, 604 F.3d 758 (2d Cir. 2010) ............................. 6

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
   324 F. Supp. 2d 474 (S.D.N.Y. 2004) .................................................................................. 9

*In re Avon Prods. Inc. Sec. Litig.*,
   No. 05 Civ. 6803(LAK)(MHD), 2009 WL 848017 (S.D.N.Y. Feb. 23, 2009) ..................... 3

*In re Axis Capital Holdings Ltd. Sec. Litig.*,
   456 F.Supp.2d 576 (S.D.N.Y. 2006) .................................................................................... 8

*In re Bristol-Myers Squibb Sec. Litig.*,
   312 F. Supp. 2d 549 (S.D.N.Y. 2004) ............................................................................ 7, 11

*In re Doral Fin. Corp. Sec. Litig.*,
   563 F. Supp. 2d 461 (S.D.N.Y. 2008),
   aff'd sub nom. *West Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 344 F. App'x 717 (2d Cir. 2009) 7

*In re Elan Corp. Sec. Litig.*,
   543 F. Supp. 2d 187 (S.D.N.Y. 2008) .................................................................................. 8

*In re Federated Dep't Stores, Inc., Sec. Litig.*,
   No. 00 CV 6362(RCC), 2004 WL 444559 (S.D.N.Y. Mar. 11, 2004) .................................. 9

*In re FVC.com Sec. Litig.*,
   136 F. Supp. 2d 1031 (N.D. Cal. 2000), aff'd, 32 F. App'x 338 (9th Cir. 2002) .................. 9

*In re Humana, Inc. Sec. Litig.*,
  No. 3:08CV-00162-JHM, 2009 WL 1767193 (W.D. Ky. Jun. 23, 2009) ................................ 5

*In re IAC/InterActiveCorp Sec. Litig.*,
  478 F. Supp. 2d 574 (S.D.N.Y. 2007) .................................................................................. 5, 8

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.*,
  423 F. Supp. 2d 364 (S.D.N.Y. 2006) .................................................................................. 4, 5

*In re Omnicom Group, Inc. Sec. Litig.*,
  597 F.3d 501 (2d Cir. 2010) .................................................................................................. 9, 10

*In re Scholastic Corp. Sec. Litig.*,
  252 F.3d 63 (2d Cir. 2001) .................................................................................................... 9

*Lentell v. Merrill Lynch & Co. Inc.*,
  396 F.3d 161 (2d Cir. 2005) .................................................................................................. 10

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
  513 F.3d 702 (7th Cir. 2008) ................................................................................................. 3

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) .................................................................................................. 6

*P. Stolz Family P'ship L.P. v. Daum*,
  355 F.3d 92 (2d Cir. 2004) .................................................................................................... 3

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*,
  694 F. Supp. 2d 287 (S.D.N.Y. 2010) ................................................................................... 8

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000) .................................................................................................... 9

*S.E.C. v. Siebel Systems, Inc.*,
  384 F. Supp. 2d 694 (S.D.N.Y. 2005) ................................................................................... 4

*Slayton v. Am. Express Co.*,
  604 F.3d 758 (2d Cir. 2010) .................................................................................................. 5

*SRM Global Fund L.P. v. Countrywide Fin. Corp.*,,
  No. 09 Civ. 5064(RMB), 2010 WL 2473595 (S.D.N.Y. Jun. 17, 2010) ............................... 3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ............................................................................................................... 3, 10

*Wright v. Ernst & Young LLP*,
  152 F.3d 169 (2d Cir. 1998) .................................................................................................. 9

## Preliminary Statement

The PSLRA was enacted to prevent precisely this type of lawsuit. Using hindsight to look back thirty-two months from The9's stock price drop following the 2009 non-renewal of its License to operate World of Warcraft ("WoW") in China, Plaintiffs conclude that every statement made by The9 during that period was fraudulent. This stratagem fails at every level.

**Failure to Plead Falsity.** The Complaint fails to plead particularized facts demonstrating the falsity of the statements upon which Plaintiffs base their claims. Those statements include The9's comments that it had a "good relationship" with Blizzard (WoW's licensor), and that it was "well-positioned" for growth. By failing in their Opposition to set forth facts demonstrating the falsity of those statements, Plaintiffs effectively concede that they are not actionable. Plaintiffs also fail to demonstrate that Defendants' forward-looking statements about the prospects for License renewal were false. Those statements were accompanied by appropriate cautionary language, and Plaintiffs fail to allege facts demonstrating that they were knowingly false. As such, they are protected by the PSLRA safe harbor.

**Failure to Plead Scienter.** The Complaint fails to allege particularized facts giving rise to a strong inference of *scienter*. Plaintiffs fail adequately to allege that Defendants had any *motive* to commit fraud, or *knew* (or were reckless in not knowing) more than two years before the License expired – and before the year-long renewal negotiations had even begun – that the License would not be renewed. Plaintiffs' Opposition essentially ignores the actions taken by Defendants during this period, which entirely undercut any inference of *scienter*: (1) Defendants spent close to a year negotiating with Blizzard in an attempt to secure the License's renewal; (2) Defendants made significant investments in infrastructure that would make sense only if Defendants thought the License would be renewed; (3) Defendants and other Company officers and directors retained their shareholdings during the period leading up to the renewal decision;

and (4) The9 itself purchased and retired over four million shares of Company stock just prior to the renewal decision. Nor have Plaintiffs pled facts necessary to establish that any of the alleged "confidential witnesses" were in "position to know" that Defendants acted knowingly or recklessly. Plaintiffs' other assertions – that the License was part of The9's "core business," that certain Company officers resigned, that there were purported "massive write-offs" after the non-renewal decision had been rendered, and that Defendants made inconsistent statements about the timing of License renewal discussions/negotiations – are makeweight, and clearly inadequate to plead *scienter* under well-settled principles. In short, the non-culpable inference – that Defendants believed the License would be renewed at all relevant times – is far more "cogent and compelling" than the inference of *scienter* Plaintiffs seek to draw.

**Failure to Plead Loss Causation.** Plaintiffs now admit that Defendants made no "corrective disclosure" regarding the purported fraud, and thus turn to a "materialization of the concealed risk" theory of causation. This argument fails, however, because as the Complaint makes clear, the risk of non-renewal was repeatedly and emphatically disclosed to – and recognized by – the market. Put differently, on Plaintiffs' own pleading the risk that "materialized" was not "concealed." Plaintiffs thus fail to meet their pleading burden under any theory of loss causation.

## Argument

### I. THE COMPLAINT FAILS TO PLEAD PARTICULARIZED FACTS SUFFICIENT TO ESTABLISH FALSITY

The Complaint alleges three categories of purportedly false statements: (1) forward-looking statements about the prospects for License renewal; (2) statements about The9's "good" relationship with Blizzard; and (3) optimistic statements about The9's future growth. (*See* Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint ("Mem.") at

2

6-14.) With respect to the second and third categories, Plaintiffs simply assert that such statements are actionable because "undisclosed facts" undermined their truth. (Opp. at 15.) Neither the Complaint nor Plaintiffs' Opposition, however, identifies any such "undisclosed facts," nor do Plaintiffs point to any particularized facts supporting the assertion that these statements were false or that Defendants did not believe the statements when made.[1] Plaintiffs' failure to do so is fatal. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (PSLRA pleading requirements are "exacting").

As to Defendants' forward-looking statements about the prospects for License renewal, Plaintiffs assert that they are not "forward looking" because The9 made some statements in the "present tense." (Opp. at 9-11.) This is contrary to law and logic. The fact that some of the challenged statements are partially phrased in the present tense is not determinative of whether the statements are forward-looking. *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 97-98 (2d Cir. 2004) (statements made in present tense were "prospective in nature" and protected by cautionary language).[2] Regardless of whether the statements at issue describe The9's current relationship with Blizzard (*see, e.g.*, ¶¶ 59, 77) or the status of ongoing negotiations with Blizzard (*see, e.g.*, ¶ 77, 102, 119) – they concern the prospects for License renewal and The9's expected financial performance based on such renewal. As such, they are forward-looking as a matter of law. *In re Avon Prods. Inc. Sec. Litig.*, No. 05 Civ. 6803(LAK)(MHD), 2009 WL

---

[1] Plaintiffs also assert that Defendants' denial of rumors about the status of The9's relationship with Blizzard satisfies the requirement for pleading falsity. (Opp. at 8-9.) Not so. Denials support an allegation of falsity only if Plaintiffs allege particularized facts demonstrating the speakers knew the denied reports were true. *SRM Global Fund L.P. v. Countrywide Fin. Corp.*, No. 09 Civ. 5064(RMB), 2010 WL 2473595, at *11 (S.D.N.Y. Jun. 17, 2010). Plaintiffs point to no facts, much less particularized facts, supporting such an allegation. Indeed, Defendants' denials were supported by Blizzard's own denial of these rumors. (*See* Mem. at 12.)

[2] *See also Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702 (7th Cir. 2008) (the fact that all the statements challenged are "in the present tense is not decisive on the question whether the statements include predictions" protected by the safe harbor).

3

848017, at *17 (S.D.N.Y. Feb. 23, 2009) ("Most, if not all, of the statements on which plaintiffs focus are forward-looking since they concern, in whole or in part, the expected future performance of Avon."); *see also S.E.C. v. Siebel Sys., Inc.*, 384 F. Supp. 2d 694, 704 (S.D.N.Y. 2005) (rejecting over-scrutiny of "the tense of verbs and the general syntax of each sentence. . . . Such an approach places an unreasonable burden on a company's management and spokespersons to become linguistic experts, or otherwise live in fear of violating" regulations).

Moreover, Plaintiffs fail adequately to address the two independent reasons why these forward-looking statements are protected: (1) The9's disclosures included explicit cautionary language about the risk of non-renewal; and (2) Plaintiffs plead no particularized facts establishing that Defendants *knew* the License would not be renewed until negotiations ended in April 2009. (*See* Mem. at 8-11.)

### A. The Forward-Looking Statements Concerning License Renewal Are Accompanied by Meaningful Cautionary Language

Plaintiffs concede that The9 included cautionary language about the risk of non-renewal in its public filings, but assert that those disclosures were insufficient because they were "boilerplate," "stale," and not "meaningful." (Opp. at 12-14.) Plaintiffs are wrong on all counts.

*First*, Plaintiffs' assertion that the warnings were "boilerplate" is belied by even a cursory review of the disclosures. The9 expressly cautioned it "cannot assure . . . that Blizzard . . . will renew its license agreement" and listed "our ability to successfully renew the license agreement . . . to operate WoW in China" among The9's "risks and uncertainties." (Mem. at 4-5, 10; The9 2007 Form 20-F (Kutcher Decl. Ex. 5) at 1.) Such specific warnings about particular risks protect forward-looking statements because they "directly relate[] to the risks" that are alleged to have caused Plaintiffs' losses. *See In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 401 (S.D.N.Y. 2006) (finding cautionary language "not mere boilerplate" because it was

directly related to the risks that were alleged to have materialized). Indeed, analysts covering The9 consistently highlighted the very risk that The9 disclosed.[3] (Mem. at 5.)

*Second*, Plaintiffs' assertions that the cautionary language was "stale" because the risk of non-renewal had purportedly materialized by early 2007 and the "total mix of information . . . was constantly changing" (Opp. at 13), are not supported by particularized facts, and are internally inconsistent. Throughout the proposed class period, the risk that Blizzard would not renew the License (a decision entirely within Blizzard's control) was specifically and repeatedly disclosed by The9. Nowhere do Plaintiffs allege that this risk materialized – *i.e.*, that Blizzard had decided not to renew the License (and so informed The9) – before April 2009, when the fact of non-renewal was announced. On the contrary, the Complaint alleges that negotiations were ongoing throughout 2008 and into 2009, and that Blizzard itself confirmed as unfounded any rumors of "tensions" between the parties. (*See, e.g.*, ¶¶ 38, 68, 70, 84, 94, 102, 108, 114, 126; Opp. at 18-19.) Plaintiffs' own allegations demonstrate that the risk of non-renewal did not change during the class period, and thus that further (or different) disclosures about that risk would not have "altered the total mix of information." *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 594 (S.D.N.Y. 2007) (citation omitted).

### B. The Complaint Fails to Plead Particularized Facts Establishing That Defendants Knew The License Would Not Be Renewed

Plaintiffs also fail to plead that Defendants *knew* by early 2007 that Blizzard would not renew the License. *See Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010). As an

---

[3] Contrary to Plaintiffs' assertion (Opp. at 12), that the language in the disclosures was similar (though not identical) from year to year does not render them "boilerplate." *In re Nokia Oyj*, 423 F. Supp. 2d at 402 n.11 (finding similar cautionary language in multiple years not boilerplate); *In re Humana, Inc. Sec. Litig.*, No. 3:08CV-00162-JHM, 2009 WL 1767193, at *14 (W.D. Ky. Jun. 23, 2009) (warnings not boilerplate "simply because [defendant] made them more than once"). The9's cautionary language did not change materially from year to year because the risk of non-renewal remained the same throughout this period. The relevant legal point is that the disclosures were addressed to the specific risk of non-renewal, not to generic concerns.

initial matter, Plaintiffs essentially ignore the undisputed facts that (1) the License was not due to expire until June 2009; (2) the parties continued negotiating for its renewal through April 2009; (3) The9 invested heavily in WoW during the proposed class period, signaling its expectation of renewal; (4) The9's officers and directors did not sell Company stock in amounts and at times that were suspicious; and (5) The9 itself actually bought back Company stock during the class period. (*See* Mem. at 15-18, 22.) These facts entirely refute Plaintiffs' naked assertion that Defendants *knew* their statements about the prospects for License renewal were false.

Moreover, Plaintiffs' assertion is based entirely on the statements of four Confidential Witnesses ("CWs") – but these allegations fail to meet even the most basic pleading requirements. Three of the four CWs did not even work for The9 and do not purport to have knowledge about what any of the Defendants knew at any period of time. (*See, e.g.,* ¶¶ 39, 53, 123; Opp. at 8, 20-21.) This is clearly insufficient to establish that Defendants "knew" their statements were false. *See Campo v. Sears Holdings Corp.*, 635 F. Supp. 2d 323, 335 (S.D.N.Y. 2009) (disregarding CW accounts because no alleged facts showed they had contact with defendants or knowledge of what defendants knew).

With respect to CW4, purportedly an employee of The9 at some point, Plaintiffs provide none of the detail necessary to lay an appropriate foundation for his or her alleged testimony. Plaintiffs fail to allege CW4's position at The9, the time period during which he or she was employed there, whether CW4 saw any reports or attended any meetings in which information contrary to the challenged public statements was discussed, or the reason for CW4's departure from The9. (*See, e.g.,* ¶¶ 68, 77, 94.) Without such information, it is impossible to determine if CW4 was in position to know the facts he or she purports to allege, *Novak v. Kasaks*, 216 F.3d 300, 313 (2d Cir. 2000), or is just someone with an "axe[] to grind," *In re Am. Express Co. Sec.*

*Litig.*, No. 02 Civ. 5533(WHP), 2008 WL 4501928, at *7 (S.D.N.Y. Sept. 26, 2008) (citation omitted).[4] Moreover, the key allegation attributed to CW4 – that Zhu said License renewal was "unlikely, if not impossible" in "early 2007" – concerns a statement allegedly made *long before* Zhu made the statements about License renewal that are the subject of the Complaint. (¶ 40.) These CW allegations, even if they were to be credited, establish nothing regarding Zhu's belief about the prospects for renewal at the time he actually made the challenged statements, much less the belief of any other Defendant at any time. Plaintiffs thus fail to meet "the underlying prerequisite [regarding CWs] – that each source is described sufficiently to support the probability that the source possesses the information alleged." *Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 155 (3d Cir. 2004).

## II.  THE COMPLAINT FAILS TO PLEAD PARTICULARIZED FACTS SUFFICIENT TO ESTABLISH A STRONG INFERENCE OF SCIENTER

Plaintiffs fail to meet the PSLRA's strict requirements for pleading *scienter*. Specifically, Plaintiffs plead no particularized facts demonstrating Defendants' (1) motive to defraud; or (2) conscious misbehavior or recklessness. (*See* Mem. at 15-21; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).) *First*, with respect to motive, Plaintiffs allege that The9 engaged in related-party transactions and entered into two ordinary corporate transactions – the payment of a cash dividend that benefitted all shareholders and the adoption of a "poison pill." (Opp. at 16-17.) The allegations regarding "related party transactions" lack any particularized facts whatsoever and are not even tied to the purported fraud. (Mem. at 18-19.) Similarly, the alleged corporate transactions have no apparent connection to the allegations of fraud and cannot establish motive as a matter of law. *In re Bristol-Myers Squibb Sec. Litig.*, 312

---

[4] *See also In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008) (disregarding allegation that CW attended meetings where reports were circulated "because it contains no time frame within which the meetings occurred . . . and no information regarding how . . . the reports were discussed").

F. Supp. 2d 549, 561 (S.D.N.Y. 2004) (allegations of "ordinary and prudent corporate desires" cannot support *scienter*).

Moreover, while Plaintiffs allege that Defendant Zhu sold $125 million worth of The9 stock (Opp. at 16), the undisputed facts establish that Zhu *increased* his Company stock during the proposed class period (Mem. at 15), and that the Company itself instituted a *stock buy-back program* during that period (*id.*). *See, e.g., Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 299 (S.D.N.Y. 2010) (finding no dishonest motives where defendants increased holdings during class period). Indeed, the Complaint fails to describe any profits made by the Defendants as a result of their alleged stock sales. (*See* ¶¶ 147-48.) Nor does the Complaint describe the percentages of holdings sold by any of the "insiders," or how the stock sales listed in the Complaint were "suspicious" in timing and amount.[5] (Mem. at 17-18.) This is fatal to a claim of *scienter* based on alleged insider stock sales. *In re Axis Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 595 (S.D.N.Y. 2006).

*Second*, Plaintiffs' arguments that the Complaint creates a "strong inference" of conscious misbehavior or recklessness lack any substance.

- **Confidential Witness Allegations.** As discussed above, Plaintiffs do not establish the CWs were in position to know what the Defendants knew about the prospects for License renewal. (*See supra* at 6-7; Mem. 10 n.7, 12-13, 20-21.) The allegations regarding CW1, CW2 and CW3 relate to what *Blizzard* knew, not Defendants, and CW4's allegations provide no facts about what Zhu knew at the times his statements were allegedly made, and do not establish anything about what any other Defendants knew or believed at any time. *In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 220-21 (S.D.N.Y. 2008).

- **"Core Operations" Allegations.** Plaintiffs assert that the Court may infer *scienter* because the License was part of The9's core business. (Opp. at 17-18.) This is

---

[5] Plaintiffs also misstate the law regarding the relevance of 10b5-1 trading plan stock purchases to motive allegations. (Opp. at 16.) As this Court has held, purchases made pursuant to a 10b5-1 trading plan adopted after the beginning of the class period do not support a strong inference of scienter. *See In re IAC/InterActiveCorp.*, 478 F. Supp. 2d at 604 (10b5-1 plan entered into two months after start of class period undermines inference of scienter).

manifestly incorrect. In the cases Plaintiffs cite, falsity had been established and the only issue was whether defendants had knowledge of the false statements by virtue of their roles as "key managers" with access to the "core operations." *See In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 489-92 (S.D.N.Y. 2004); *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989). Here, Plaintiffs have not alleged any particularized facts showing that the challenged statements were false – much less, that any of the Defendants had reason to know that the statements were false. (Mem. at 20-21.)

- **Allegations of "Write-Offs."** Plaintiffs assert that "the magnitude of the write-offs related to the loss of the WoW license" supports an inference of *scienter*. (Opp. at 18.) Again, this is incorrect. First, "the size of the write-off, without more, is not enough to establish scienter." *In re Federated Dep't Stores, Inc. Sec. Litig.*, No. 00 CV 6362(RCC), 2004 WL 444559, at *8 (S.D.N.Y. Mar. 11, 2004). Moreover, in each of the cases cited by Plaintiffs, the company took a charge for an event that had occurred in the past, and which the company knew about at the time – but failed to disclose. *See In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 77 (2d Cir. 2001); *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000). Here, The9 wrote off the value of equipment used to operate WoW from its 2008 year-end financial statements only *after* non-renewal had been established – an event subsequent to the date of those financial statements. (¶ 141.) Nothing about The9's write-offs based on a known subsequent event suggests that those write-offs could – or should – have been taken earlier. *See In re FVC.com Sec. Litig.*, 136 F. Supp. 2d 1031, 1037 (N.D. Cal. 2000) (adjustment of unaudited financial statements because of subsequent events is "entirely proper").

- **Allegations Regarding Timing of Negotiations.** Plaintiffs allege that Chen said renewal "negotiations" began in May 2008, while Zhu said in November 2007 that The9 was in "talks" with Blizzard. (Opp. at 18-19.) Notwithstanding Plaintiffs' conclusory assertion that this alleged "discrepancy" somehow supports *scienter*, those statements on their face are not inconsistent: discussions with Blizzard were ongoing, while formal negotiations regarding the License began in May 2008.

- **Allegations of Resignations.** That certain Defendants resigned during the proposed class period is irrelevant to the claim of *scienter* – absent particularized facts establishing that the resignations related to the alleged misstatements. *See In re Omnicom Group, Inc. Sec. Litig.*, 597 F.3d 501, 513-14 (2d Cir. 2010) (rejecting assertions based on disclosure of resignations not tied to the alleged fraud). Plaintiffs allege no facts tying the resignations of Ms. Lee or Mr. Tse to any purported fraud. (*See* Opp. at 21-22.) Plaintiffs also argue that The9 replaced its auditor and did not renew Chen's contract, but fail to suggest how these events were connected to the claimed fraud. (*See* Opp. at 21-22.) In any event, these assertions cannot be considered by the Court because they are raised for the first time in Plaintiffs' Opposition. *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

*Finally*, Plaintiffs offer no meaningful response to Defendants' showing that the non-culpable inference – *i.e.*, Defendants believed until April 2009 that Blizzard would renew the License, as supported by the litany of facts discussed above (*see supra* at 5-6; *see also* Mem. at 21-22) – is the most "cogent and compelling" inference to be drawn here, essentially conceding that they have failed to meet their pleading burden. *Tellabs*, 551 U.S. at 324; Opp. at 22 n.27.

## III. THE COMPLAINT FAILS TO PLEAD LOSS CAUSATION

The supposed "corrective disclosures" alleged by Plaintiffs revealed only that the License was not renewed at the end of its term – not that Defendants previously misled the market. (Mem. at 23-24.) Plaintiffs essentially concede this point and thus resort to a "materialization of the concealed risk" theory. (Opp. at 1, 22-24.) This argument, however, is easily dispatched.

To allege loss causation under a "materialization of the risk" theory, Plaintiffs must allege that a risk was *concealed* throughout the class period, and that Plaintiffs were harmed when that risk later materialized. *In re Omnicom Group, Inc.*, 597 F.3d at 513-14 (misrepresentation is cause of investment loss if risk that materialized was "within the zone of risk *concealed* by the misrepresentations") (citation omitted). Plaintiffs' own allegations, however, demonstrate widespread market recognition of the very risk they now claim materialized: the possibility that the License would not be renewed. (*See* ¶¶ 38, 70, 84, 108.) This risk was repeatedly disclosed in The9's annual reports, and was reiterated frequently by analysts and in media articles. (Mem. at 4-5, 10-11.) When the License was not renewed, The9's announcement revealed only that a *well-known* risk had materialized. That announcement could not have caused Plaintiffs' loss as a matter of law. *Lentell v. Merrill Lynch & Co. Inc.*, 396 F.3d 161 (2d Cir. 2005) (loss causation not pled when "the risk of price volatility . . . is apparent on the face of every report" at issue).

### Conclusion

During the Court conference on May 7, 2010, Plaintiffs were offered the chance to file an amended complaint in light of the arguments presented in Defendants' pre-motion letter. Plaintiffs declined. The Consolidated Complaint should now be dismissed with prejudice. *See In re Bristol-Myers Squibb*, 312 F. Supp. 2d at 554, 570.

August 11, 2010
New York, New York

Respectfully submitted,

LATHAM & WATKINS LLP

By: _____
Peter A. Wald (*pro hac vice*)
David J. Schindler (*pro hac vice*)
Ethan Brown (*pro hac vice*)
Robert J. Malionek
Matthew L. Kutcher

885 Third Avenue
New York, New York 10022
(212) 906-1200

*Counsel for Defendants The9, Ltd., Xiaowei Chen, George Lai, Hannah Lee, Tony Tse and Jun Zhu*

11